(No. 58104.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES WARD, Appellee.

*Opinion filed March 23, 1984.—Rehearing denied June 4, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and John Baricevic, State's Attorney, of Belleville (Mark L. Rotert, James E. Fitzgerald, Michael B. Weinstein,

and Jack Donatelli, Assistant Attorneys General, of Chicago, and Stephen E. Norris and Debra A. Buchman, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Diana N. Cherry, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, James Ward, was convicted of murder by a jury in the circuit court of St. Clair County for the beating death of a four-year-old boy and was sentenced to 25 years in the penitentiary. The appellate court reversed the conviction (112 Ill. App. 3d 547), and we granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The child, Montez Moore, lived with his mother, Harriet Young, and a younger brother. The defendant was a boyfriend of Young, knew her for about a year, and lived with her on occasion. About 2:30 a.m. on the morning of February 19, 1983, the defendant went to Young's house. Harriet Young apparently told the defendant that she had earlier whipped Montez because he had wet his bed and had put hot chocolate in their dog's water pan. The two children were asleep at this time.

The testimony regarding the fatal beating was conflicting. Young testified that she awoke and found that Montez had again wet his bed. She stated that, as punishment, she hit him on the "rump" with a mop stick, but did not beat him. She testified that later, at about 11:30 a.m. on the 19th, the defendant first beat Montez with the mop stick on the chest, stomach and back, for wetting the bed. Young testified that an hour later the defendant again beat the child severely, without apparent reason. She said that the child, at one point, cried

for help, but that after a while had stopped crying during the beatings. The defendant testified that he did not touch Montez that day. He stated that he was awake at 11 a.m. for a short time, slept again until 3:45 p.m., and left the house at 4 p.m.

Mary Owens, the defendant's sister, testified that she arrived at Young's house at 4 p.m., as the defendant was leaving it, to check on her children who had been left at Young's house earlier. She had had a conversation with Young and then had fallen asleep, when one of her children awoke her and said that Montez would not awaken. She immediately went to another bedroom where Young was trying to awaken Montez, who felt like ice, she said. An ambulance was called and Montez was pronounced dead at 8:20 p.m. February 19, by an emergency room physician at St. Mary's Hospital in East St. Louis. He testified that there were multiple linear bruises on the child's body too numerous to count. Specifically, his face, arms, legs, chest, back and buttocks were swollen and deeply bruised. In his opinion, the child, when admitted, had been dead for about five to seven hours. The pathologist who performed the autopsy testified that the child died from respiratory arrest due to cerebral edema. He said that there were compression injuries of the lungs accompanied by aspiration of partially digested milk into the airway, which contributed to the child's death. The linear bruises could have been caused by an instrument such as a mop stick, and he concluded that the death could not have been accidentally caused. His opinion was that the beating took place about 4 to 12 hours before death.

At the hospital, Young was questioned by a nurse about the child's injuries. At trial, in testifying for the People, Young admitted having given numerous conflicting stories to explain the injuries because, she stated, she was frightened and wanted to cover up for herself

and the defendant. She said that the defendant had told her to make up a story explaining the child's injuries.

At the time of the defendant's trial, Young had been tried and convicted of the murder of Montez in a separate, earlier trial.

Officer Louis Moore of the East St. Louis police, accompanied by Viola Moore, grandmother of the child, testified that he had gone to Young's home and picked up items apparently used in the beating. A shoe, a roller shade and a mop stick were taken by him. Officer Moore testified that while the defendant was in custody he asked to see Viola Moore. Officer Moore testified that after escorting Mrs. Moore to a desk where the defendant was seated, he overheard the defendant say to Mrs. Moore, "I didn't mean to do it," and that the defendant said that he had beaten Montez for putting some cocoa in the dog's water.

Viola Moore also testified that she talked to the defendant at the police station and asked him if he had beaten the child. She testified that he answered yes, but that he didn't mean to do it and that he had beaten the child for putting cocoa in the dog's water. She testified that the defendant said he began hitting the child with a shoe, but got angry and had beaten him with a stick. She also testified that she asked the defendant why he didn't get medical help for the child and the defendant stated that "he was scared." The defendant admitted seeing Viola Moore at the police station, but denied asking for her or speaking to her.

There was additional testimony that the defendant and Young had beaten her children on prior occasions. Mary Owens testified that she had seen the defendant spanking Montez with a belt and with his hands on two prior occasions. Pat Lynn, a social worker of the Illinois Department of Children and Family Services, said that, in 1977, Young admitted beating her older child, Re-

ginald, with a TV antenna cord. The defendant sought to introduce testimony of Vivian Sanders, a supervising social worker of the Department of Children and Family Services, that persons with previous histories of child abuse will continue that abuse if they are not restrained or given psychological therapy. The court sustained the prosecution's objection to the proposed testimony as irrelevant and ruled, too, that she was not qualified as an expert witness. The defendant's two sisters, Mary Owens and Havana Owens, and a neighbor, testified that the defendant had babysat for their children and never had harmed them.

The appellate court's ground for reversing the conviction was that the trial court erred in failing to give the defendant's tendered instruction on involuntary manslaughter. The court considered that there was evidence in the record which, if believed by the jury, would support a conviction of involuntary manslaughter. The court stated that, since the case was to be remanded for retrial, it would address defendant's other contentions of error. The court went on to hold that not only were parts of the prosecutor's closing argument improper, but that the trial court erred in excluding evidence of prior child abuse by Harriet Young and in rejecting the proposed testimony of Vivian Sanders.

The contentions of the State include these points: (1) there was no evidence in the record to support an involuntary manslaughter conviction, since the severity of the beatings negated any possible inference of recklessness, coupled with the fact that the defendant testified that he had never struck or touched the child; (2) the prosecutor's remarks represented fair comment on the evidence, but even if improper, they were harmless error and did not deny the defendant a fair trial; and (3) that the introduction of Young's prior acts of discipline was not relevant as to whether the defendant had beaten the victim

on the day in question and that the trial court did not err in excluding such evidence.

The jury was given instructions on the elements of murder and aggravated battery. The court also instructed that to sustain a murder charge the State must prove:

"FIRST: That the defendant performed the acts which caused the death of Montez Moore;

SECOND: That when the defendant did so, he intended to kill or do great bodily harm to Montez Moore, or

he knew that his act would cause death or great bodily harm to Montez Moore, or

he knew that his acts created a strong probability of death or great bodily harm to Montez Moore, or

he was attempting to commit or was committing the crime of aggravated battery.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

Involuntary manslaughter is committed by one who "unintentionally kills an individual without lawful justification *** if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1981,

ch. 38, par. 4—6.) The defendant argues that an accused is entitled to have the jury instructed as to involuntary manslaughter if there is any evidence from which the jury could conclude that he was guilty of a reckless act. The appellate court considered that there was evidence to justify an involuntary manslaughter conviction. 112 Ill. App. 3d 547, 554.

This court has held that credible evidence in the record which would reduce murder to manslaughter entitles an accused to a manslaughter instruction. (*People v. Joyner* (1972), 50 Ill. 2d 302; *People v. Canada* (1962), 26 Ill. 2d 491.) An involuntary manslaughter instruction, however, should not be given if there is no evidence which would reduce the crime to manslaughter. *People v. Simpson* (1978), 74 Ill. 2d 497; *People v. Sanders* (1974), 56 Ill. 2d 241; *People v. Handley* (1972), 51 Ill. 2d 229.

The appellate court stated that the trial court should have given an involuntary manslaughter instruction because there was "some evidence in the record which, if believed by the jury, would justify a conviction of *** involuntary manslaughter." (112 Ill. App. 3d 547, 554.) The court, however, does not state what that evidence was. The appellate court apparently based its conclusion on the testimony of Viola Moore and Officer Moore, who testified that the defendant stated that he "didn't mean to" kill Montez. The defendant's testimony, however, was that he never struck or touched the child on the day in question. If the jury believed the evidence of the defendant, *i.e.,* that he never struck or even touched the child, then the defendant should have been found not guilty of murder. There was no evidence whatever that the defendant acted recklessly.

Even if one would assume, *arguendo,* that the defendant's statement that he "didn't mean to" kill Montez was to be considered evidence that he acted recklessly, we judge that the severity of the beating negates any suggestion that his conduct was only reckless. (See *People v.*

*Swiontek* (1945), 391 Ill. 618; *People v. Causey* (1978), 66 Ill. App. 3d 12; *People v. Brown* (1967), 89 Ill. App. 2d 231.) A blow from a bare fist can result in murder where, as here, there is great disparity in size and strength between the defendant and the victim. (See *People v. Drumheller* (1973), 15 Ill. App. 3d 418.) The majority in the appellate court acknowledged the sickening severity of the beating:

> "Here, the injuries inflicted on the child were severe. The medical testimony established that considerable force was used in the beating because bruises were found in the chest muscles and on the lungs, both protected by the chest cavity, and on the brain, protected by the skull. The chest had been struck so hard that it was compressed, forcing the lungs up against the child's spine. The emergency room physician testified that the bruises were so dark they appeared to be burns. Neither the physician nor the pathologist could accurately estimate the number of bruises inflicted. In this case, the severity of the beating and the evidence that it was administered in part with a mop handle would clearly support the jury's determination that defendant was guilty of murder ***." (112 Ill. App. 3d 547, 553.)

We consider that the evidence supported the jury's guilty verdict.

The child-beating homicide decisions cited by the appellate court where involuntary manslaughter instructions were given are distinguishable. In those cases, the defendants admitted striking the victims, and there was evidence which could support a claim of involuntary manslaughter. Too, the beatings did not compare in brutality with the beatings of Montez Moore. Justice Welch in his concurring opinion aptly observed:

> "[T]o allow an excessively savage beating of a child to be considered 'reckless' when such a beating made on an adult would be intentional as a matter of law defies common sense. *** I believe that the beating death of any

victim, including a child, which is so extensive as to negate any possibility it was inflicted recklessly, is insufficient evidence to support an involuntary manslaughter instruction." 112 Ill. App. 3d 547, 558 (Welch, J., specially concurring).

The record does not permit the conclusion that the trial court's refusal to give an involuntary manslaughter instruction was error.

The defendant's next contention is that the overruling of his objection to the following statement of the prosecutor during closing argument was reversible error:

"And when Harriet Young came before you, she in fact was convicted at that moment for the murder of her own little boy. Not so much upon the premises of what she did, but what she failed to do when she had a duty to do something about it. Stand by and allow something like that to happen."

The objection of the defendant reads:

"Objection, Your Honor. There has been no evidence as to why she was convicted or what she did or didn't do."

The court responded:

"Well, the jury heard the evidence, and they will make the judgment. Objection will be overruled."

The defendant relies on *People v. Sullivan* (1978), 72 Ill. 2d 36, in which this court stated that "[a] defendant who is separately tried is entitled to have his guilt or innocence determined upon the evidence against him without being prejudged according to what has happened to another." (72 Ill. 2d 36, 42.) In *Sullivan*, however, the prosecutor made repeated references throughout the trial to the guilty pleas of two accomplices to the crime being prosecuted. The court held that it was error for the prosecutor to urge the jury to gauge the accused's guilt by the fact that his accomplices previously entered guilty pleas to the same charge. 72 Ill. 2d 36, 43.

Here the prosecutor did not ask the jury to determine

the defendant's guilt on the ground that there was a conviction of Young for the murder of Montez. On the direct examination of Young, the State brought out the fact of Young's murder conviction. This not only could have affected her credibility in the jury's eyes, but it made clear to the jury that possibly she alone, and not the defendant, was responsible for the death of her child. Further, contrary to the defendant's objection, there was evidence of what Harriet Young "did or didn't do." Her testimony was that she saw the defendant beat Montez on two occasions while, it appears in the record, she stood by and ignored her child's cries for help. There was this evidence presented to the jury without objection from which the jury could infer that Young's conviction was based at least in part on her refusal to aid the child. The pertinent question involved is whether the argument denied the defendant a fair trial because it was not based upon relevant evidence in the record or legitimate inferences to be deduced from the evidence. (*People v. Wright* (1974), 56 Ill. 2d 523.) Unlike the case in *Sullivan,* the prosecution did not ask that the jury find the defendant guilty because Young had been found guilty. The complained-of remark was what was in evidence.

In overruling defendant's objection to the comment, the trial court not improperly stated that "the jury heard the evidence and *** will make the judgment" as to what Harriet Young did or did not do on the day the child was killed. The court did not abuse discretion in overruling the objection. See *People v. Smothers* (1973), 55 Ill. 2d 172; *People v. Hovanec* (1979), 76 Ill. App. 3d 401.

Too, in considering whether the remark was so improper under the circumstances of this case, we must not regard the remark in isolation. We must view the other evidence presented of the defendant's guilt. (See *People v. Baptist* (1979), 76 Ill. 2d 19.) There was the testimony of Harriet Young that she saw the defendant beating Montez

twice and Officer Moore's and Viola Moore's testimony of the defendant's admissions that must be considered. The remark did not substantially prejudice the defendant.

Finally, the State argues that the appellate court erred in holding improper the exclusion of testimony regarding prior child abuse by Harriet Young and the exclusion of testimony by Vivian Sanders, a supervisor from the Department of Children and Family Services, regarding the recurrent nature of child abuse in certain individuals.

An accused, of course, may attempt to prove that someone else committed the crime with which he is charged (*Synon v. People* (1901), 188 Ill. 609), but this right is not without limitations. This court in *People v. Dukett* (1974), 56 Ill. 2d 432, quoted its observation in *People v. Nitti* (1924), 312 Ill. 73, 90:

> " 'One accused of crime may prove any fact or circumstance tending to show that the crime was committed by another person than himself. [Citations.] It is, of course, difficult, in dealing with evidence of this character, to define the precise limits which must control its admission. If it is too remote in time to throw light on the fact to be found it should be excluded. [Citations.]' " (56 Ill. 2d 432, 450.)

"The test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged" (*People v. Peter* (1973), 55 Ill. 2d 443, 459), and whether what is offered as evidence will be admitted or excluded depends upon whether it tends to make the question of guilt more or less probable; *i.e.*, whether it is relevant (*People v. Rodgers* (1972), 53 Ill. 2d 207, 214-15). A trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty or its possibly unfair prejudicial nature. (*People v. Boyd* (1980), 81 Ill. App. 3d 259, 263; *Hagerman v. National Food Stores, Inc.* (1972), 5 Ill. App. 3d 439, 441.) The admission of evidence is within the sound discretion of the

trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. *Veer v. Hagemann* (1929), 334 Ill. 23, 28; *Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 654; *Fullerton v. Robson* (1978), 61 Ill. App. 3d 93, 96.

The trial court would not admit the testimony of Viola Moore. In an offer of proof made outside the presence of the jury, she testified that Young's older child, Reginald, was beaten and taken to a hospital in 1977. She did not know if Young or Young's husband, who was living with her at the time, had beaten the child on that occasion. It clearly was not error by the trial court to exclude this testimony, since it occurred four years prior to the beating alleged in the indictment, concerned Young's older child, and was uncertain and speculative in that the witness did not know whether it was Harriet Young who had beaten Reginald.

Havana Owens, a sister of the defendant, was not allowed to testify whether she had seen Young beat her children. In an offer of proof it was stipulated that she did see Young beat one of her children. We cannot say that the court abused its discretion in excluding the proposed testimony. Young had already been convicted of the murder of Montez and the jury was aware of it. It is true that evidence of Young's prior conduct might tend to show that she had beaten Montez on the day in question, but the evidence would have been irrelevant because admittedly she had struck Montez that day. The question for the jury was whether or not the defendant, as well as Young, was guilty of the murder of Montez. Under the circumstances present we cannot say that the trial court abused discretion in excluding evidence of Young's prior physical disciplining.

The trial court did admit some testimony of Young's having beaten her children. The rationale of admitting this testimony, however, seems to have been for its possible effect on her credibility and not on the ground of relevance.

Young had testified that she had never beaten her children, and Mary Owens, who also was a sister of the defendant, testified that she had seen Young beat one of her children. Details of this incident were denied admission, however.

On the same ground of possibly affecting credibility, other evidence of Young's prior conduct was admitted. A social worker, Pat Lynn, was permitted to testify that Young's oldest boy, Reginald, had been removed from the household and placed with his grandmother, Viola Moore. Lynn testified that in March 1977 Young admitted having beaten the child. It appears that this testimony was admitted to contradict prior statements by Young to Lynn that she never had beaten her older child.

There was no error in not admitting the testimony of Vivian Sanders, a supervisor with the Department of Children and Family Services. She testified outside the jury's presence, in an offer of proof, that persons who abuse children will continue to do so unless they obtain counseling therapy. On cross-examination she admitted that, according to her records, there were no instances of abuse on Montez and only one instance of abuse in 1977 of Reginald.

As stated above, the admission of evidence is within the sound discretion of the trial judge, and we cannot say that discretion was abused in this situation. The guilt or innocence of Young was not in issue. She was guilty as the jury knew. The jury knew, too, that she had struck Montez on the day in question. As to the exclusion of the 1977 incident involving Reginald, it was not even known whether, as we have seen, it was the mother or father who had mistreated him. There was no error in not admitting the testimony of Sanders.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*