THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN WHEELER, Defendant-Appellant.

First District (5th Division)   No. 1—87—2476

Opinion filed January 26, 1990.

Emory Andrew Tate & Associates, Ltd., of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Jane E. Loeb, and David P. Gaughan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Steven Wheeler appeals from his conviction of murder after a bench trial. The sole issue on appeal is whether the trial court's rulings restricting testimony regarding defendant's prior use of alcohol and drugs were prejudicial to his insanity defense.

Defendant does not deny that he killed Caroline Dotson on March 4, 1986. He and Dotson had lived together for over a year and had a daughter. Defendant moved out of Dotson's apartment in December 1985, although the couple continued to see each other, with defendant spending some nights with Dotson. Defendant and Dotson, with her three children, had stayed together at the home of his mother from March 1 through March 3, 1986. On the morning of March 4, defendant went to work. He drank two shots of whiskey at noon and returned to work, where he drank another half-pint of whiskey. After leaving work at 5 p.m., he stopped at a bar and had several more drinks. He then went to his mother's home and smoked one gram of cocaine.

Around 6:45 p.m., defendant left for Dotson's home, taking a gun with him. Defendant testified that he had been "stuck up" in the area several months earlier. Upon arriving at Dotson's home, defendant asked her who Jimmie Lee was. She replied that he was a man who had been giving her money and, in vernacular terms, that she had been sleeping with him. Defendant testified that the next thing he remembered was Dotson lying on the floor.

Dotson's eight-year-old son testified that defendant arrived at Dotson's home with a gun in his pocket which he placed on a shelf before he started fighting with Dotson. Defendant then grabbed the gun and shot Dotson twice, left the apartment, but reentered and shot the screaming woman two more times.

When defendant was arrested at his brother's home later that evening, he told an officer that he had shot and killed his girl friend. The officer smelled no odor of alcohol on defendant. Detective William Kelly testified that when he spoke with defendant around 2 a.m. on March 5 at the police station, defendant told him that he had shot Dotson and identified the gun he had used, which police had recovered from his brother. Around 5:18 a.m., defendant gave a court-reported confession that was quite detailed. During the statement proceedings, defendant corrected the assistant State's Attorney when asked if the arresting officers had taken him directly to the Area 4 violent crimes section. Defendant acknowledged that he had been taken first to another police station "on Damen." During his trial, defendant stated that he did not remember exactly what had occurred in Dotson's apartment or with the police or assistant State's Attorney. However, in his statement he admitted shooting Dotson twice and leaving the apartment, returning to shoot her twice more.

At trial, defendant contended that when he shot Dotson, he was insane as a result of prolonged substance abuse and paranoia. He testified that between December 1985 and March 1986, he drank 1½ pints of whiskey a day and spent between $120 and $180 a week on cocaine. In support of his insanity defense, he called as a witness Frederico Duran, a co-worker who had socialized with defendant for approximately five years. Duran stated that he saw defendant have four shots of whiskey at a bar after work on the Friday before the shooting, which occurred on Tuesday. The court refused to allow defense counsel to question Duran regarding defendant's prior use of alcohol or drugs, limiting his testimony to events occurring on the Friday before the murder.

Dr. Henry Conroe, a psychiatrist testifying for the defense, reported that he interviewed defendant in October 1986 and concluded

that defendant suffered from paranoia and mixed substance abuse. The doctor noted that the alcohol and drug use had increased in the eight months preceding the shooting. Dr. Conroe also testified that the employer for whom defendant had worked as a printer for six years told the doctor that defendant was an excellent worker whom the employer would retain if he were not in jail. Conroe opined that, based on his diagnoses, defendant was "unable to appreciate the criminality of his action or conform his conduct to the requirement of the law" at the time of the killing.

Dr. Lisa Grossman, a clinical psychologist, and psychiatrist Dr. Robert A. Reifman, who had examined defendant in June 1986, testified as State expert witnesses. Dr. Grossman found that defendant suffered from substance abuse and a mixed personality with antisocial behavior, but that he was sane when he shot Dotson. The trial court sustained an objection to defense counsel's attempts to cross-examine the doctor regarding the duration of defendant's drug abuse. Dr. Reifman agreed with Dr. Grossman that defendant was rational and coherent and legally sane on March 4. He diagnosed defendant as a passive, aggressive personality with substance abuse. Defendant allegedly told Reifman that he had killed Dotson because she was unfaithful. Defendant testified that he had never been treated for alcohol or drug abuse, he had never had the "shakes" or hallucinations, and his drinking had never interfered with his job performance.

The trial court found defendant guilty of murder and sentenced him to 30 years' imprisonment. We must affirm the trial court for the following reasons.

Defendant contends on appeal that the trial court's rulings restricting Duran's testimony to events occurring within a four-day period preceding the shooting of Dotson and the limitations of defense counsel's cross-examination of Dr. Grossman were prejudicial to his defense. He argues that these rulings prevented him from presenting evidence crucial to his defense of insanity resulting from his prolonged and intensive abuse of alcohol and drugs. We find the limitations on Duran's testimony were proper, but that it was harmless error to restrict cross-examination of Dr. Grossman.

■ A person is not criminally responsible for his conduct at the time of an offense if, as a result of a mental disease or defect, he lacks substantial capacity to either appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).) Once a defendant raises an insanity defense, a presumption that all persons are sane may be overcome by presenting evidence that raises a reasonable doubt that he

was sane at the time of the offense. (*People v. Dunigan* (1981), 96 Ill. App. 3d 799.) The State must then prove that the defendant was sane when he committed the crime. (*People v. Eckhardt* (1987), 156 Ill. App. 3d 1077.) Only insanity existing at the time of the crime, and not before or after, can serve as an excuse for its commission. (*People v. Littlejohn* (1986), 144 Ill. App. 3d 813.) Moreover, it is for the trier of fact to determine whether a defendant was insane at the time of the offense, and a reviewing court will not reverse that determination unless it is so improbable or unsatisfactory as to raise a reasonable doubt as to the defendant's sanity, or is so manifestly contrary to the manifest weight of the evidence as to indicate that it was based on passion or prejudice. *People v. Kapsalis* (1989), 186 Ill. App. 3d 96.

■■ Generally, a voluntary intoxicated or drugged condition precludes the use of an insanity defense unless a mental disease or defect has resulted from the habitual or chronic use of drugs or alcohol and such use results in a permanent type of insanity. (*People v. Free* (1983), 94 Ill. 2d 378; *People v. Downey* (1987), 162 Ill. App. 3d 322.) Cases have required such use to have been of long duration (*People v. Mask* (1975), 34 Ill. App. 3d 668; and see *People v. Cochran* (1924), 313 Ill. 508 (the fact that, three years before offense, defendant was temporarily committed to mental institution for treatment of a permanent type of insanity caused by drinking moonshine is relevant to sanity at time of crime); *People v. Bray* (1964), 52 Ill. App. 2d 384 (defendant's claim of 20 years' alcoholism, by itself, was insufficient evidence of insanity at time of offense)).

■■ ■ In presenting his defense, it is without question that a defendant has a right to present relevant evidence and witnesses during trial. (See *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646.) And, almost every aspect in a defendant's life is relevant when an insanity defense is raised, although relevancy remains a prerequisite for admission of evidence. (*People v. Buggs* (1986), 112 Ill. 2d 284.) A fact is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable. (*People v. Free* (1983), 94 Ill. 2d 378.) Based on these and the above rules, the trial court's restriction of the direct examination of defendant's friend Duran was not error. As revealed in the sidebar, defense counsel wanted to question Duran as to how many times he had stopped after work to drink with defendant in the year preceding Dotson's death. Such questioning only goes to proof of defendant's addiction, not to any resultant permanent insanity. (See *People v. Downey* (1987), 162 Ill. App. 3d 322.) Since defendant's sanity was the issue in question, the frequency and amounts he drank during the preceding year were

not relevant to that issue. In addition to being nonrelevant, such testimony would have been cumulative to testimony of defendant and Dr. Conroe that defendant had a worsening drug and alcohol problem, for at least the preceding eight months, and was therefore properly excluded. See *People v. Ward* (1984), 101 Ill. 2d 443.

■■ ■ The restriction of defense counsel's cross-examination of Dr. Grossman is a different matter. Wide latitude should be allowed in the cross-examination of an expert witness, and the scope of inquiry into the basis of such an opinion is broad. (*People v. Buggs* (1986), 112 Ill. 2d 284.) Dr. Grossman testified that defendant suffered from substance abuse, but she was not allowed to be cross-examined as to the duration of that abuse. Defendant's defense rested, in part, on the duration of his abuse. Guided by the rules enunciated by our supreme court in *People v. Buggs*, the preferable course would have been to allow full cross-examination of the psychologist. However, the scope of cross-examination is largely discretionary and will be overturned only where an abuse of that discretion manifestly prejudices the defendant. (*People v. Gacho* (1988), 122 Ill. 2d 221.) Any error committed here was not prejudicial to defendant and was, therefore, harmless. Harmless error occurs where a reviewing court can safely conclude that the same result would have been effected without the error. *People v. Myles* (1985), 131 Ill. App. 3d 1034.

We can discern neither prejudice nor a different result where both Dr. Grossman and Dr. Reifman opined that defendant was sane when he killed Dotson and, further, where both Dr. Conroe and defendant testified as to the duration and growing severity of defendant's abuse problems. The eight-months-to-one-year period of time in this case is not equivalent to the length of abuse in the few cases in which a defendant has successfully asserted a defense of insanity based on abuse of alcohol and/or drugs over a long period of time.

It is for the trier of fact to resolve contradictory testimony of expert witnesses in determining the sanity of a defendant. (*People v. Meeker* (1980), 86 Ill. App. 3d 162.) The trial court's determination that defendant was sane when he killed Dotson is supported by other evidence in addition to Grossman's and Reifman's opinions. (See *People v. Kapsalis* (1989), 186 Ill. App. 3d 96.) Defendant testified that he had never been treated for any mental problem or substance abuse; he had never had the "shakes" or hallucinations. It was also shown that his alleged problem never interfered with his ability to perform his job, which he had held for six years. In addition, defendant's coherency and detailed accounting of events immediately after his arrest and several months later when he talked to the examining

184

doctors further bolster the trial court's conclusion.

Accordingly, it is apparent that the restriction of the cross-examination of Dr. Grossman regarding the duration of defendant's substance abuse did not deny him a fair trial; thus, there was no prejudice. Nor, under the circumstances of this case, can we conclude that the results would have been any different had full cross-examination been permitted. Therefore, we must affirm defendant's conviction.

Affirmed.

COCCIA, P.J., and LORENZ,* J., concur.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time Justice Francis S. Lorenz was designated the third member of the panel and has read the record and briefs and has listened to the oral argument tape.