THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE FLORES, Defendant-Appellant.

First District (5th Division)    No. 1—90—0031

Opinion filed January 20, 1995.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Liza C. Siracusa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

BACKGROUND

The defendant-appellant, Jose Flores, was charged with burglary and looting arising from an incident which occurred on June 1, 1988. A jury returned verdicts of guilty on both charges on December 15, 1989, and the circuit court entered judgment on those verdicts. On January 24, 1990, the court sentenced the defendant to concurrent terms of three years for burglary and two years for looting. For the reasons set forth below, we affirm both of the defendant's convictions.

FACTS

On October 5, 1989, the circuit court set December 12, 1989, as the defendant's final trial date. The State answered ready for trial on December 12, with the victim, two witnesses, and one police officer present in court; the assistant public defender who represented the defendant on that date requested a continuance. We note that the Cook County public defender's office had represented the defendant continuously since his arrest but that the particular assistant who represented the defendant on December 12 had not previously appeared on his behalf.

The defendant's counsel explained that although "[he] had an opportunity to review the file, the facts of the file, and an opportunity to talk to [his] client," he was not ready for trial then because "there are some discovery matters which quite honestly were not done in this case." Specifically, he requested a continuance to obtain discovery materials relating to an investigation of the origin of a fire at the victim's apartment and to obtain medical records relating to injuries the defendant sustained at the time of the underlying occurrence. Counsel stated that such additional discovery would have been important because if the victim had set fire to his own apartment, his credibility would have been damaged and because medical records showing the extent of the defendant's injuries could possibly have corroborated his alibi. The defendant's counsel advanced no other grounds in support of his motion for a continuance.

The circuit court denied the defendant's motion for a continuance, noting that his case had been originally set for trial on October 24, 1988, had been continued six times since then, and that December 12 had been set as a final trial date approximately two months earlier. It also found that the additional discovery for which the defendant sought the continuance would likely not yield relevant evidence. We note here that although the court denied the defendant's motion for a continuance on December 12, his trial did not commence until December 14 because he first requested a jury trial at the December 12 hearing.

At trial, the State's first witness, the victim, Daniel Zavala, testified that on June 1, 1988, at approximately 4:15 p.m., a fire occurred inside his apartment located at 2345 W. 21st Street in Chicago. Because of the damage to his apartment, Zavala and his family arranged to stay at the residence of George Almanza, immediately next door at 2343 W. 21st Street. At approximately 11 p.m. on June 1, 1988, the victim returned to his fire-damaged apartment and at that time heard noises coming from its kitchen. The victim observed the defendant, whom he identified in court, inside his kitchen holding his saw, his drill, and his wife's purse. Upon being discovered, the defen-

dant told the victim "[d]on't worry. You go looking for yourself, and I go looking for myself. And if you find something, it's for you. If I find something, it's for me. Okay?"

The victim then summoned Jose Almanza and both observed the defendant attempting to run from the apartment with the victim's property. They then used physical force to prevent the defendant from leaving, removed him from the apartment through its front door, and held him for the police. The victim also testified that a board which had been placed over a hole created because of the earlier fire had been removed.

When the police arrived the victim noticed that the defendant was wearing his wristwatch, which the officers then removed and returned to him. The victim later identified as his property two additional watches, a whistle and a Christmas card which the police recovered from inside the defendant's clothing.

Jose Almanza testified next for the State. He corroborated the victim's testimony, identifying the defendant in court as the person they discovered in the victim's apartment on the evening of June 1, 1988. Almanza stated on cross-examination that in preventing the defendant from fleeing he pushed him down twice and he may have struck him.

The State's next witness, George Almanza, corroborated the testimony of both the victim and Jose Almanza, stating that he observed them remove the defendant from the victim's apartment and that the defendant at that time struggled with them. George Almanza testified that he then hailed two police officers who investigated and then arrested the defendant.

Officer Walter Tarka of the Chicago police department was the State's next witness, and he testified that he and his partner arrested the defendant on June 1, 1988, after learning that he was discovered inside the victim's apartment taking property. Tarka confirmed that the victim observed his wristwatch on the defendant's wrist and that he returned it to him.

As Tarka transported the defendant to a police station after his arrest, the defendant "keeled over" to one side, indicating that he required medical attention. The defendant was then brought to a nearby hospital where hospital personnel undressed him. Tarka then discovered two watches, a whistle, and a Christmas card inside his clothing. The victim, as noted above, later identified those items as his property.

After Officer Tarka's testimony, the State rested and the defendant testified on his own behalf. He denied ever entering the victim's apartment but explained that as he walked down 21st Street on the

evening of June 1, 1988, a group of men called him names and then attacked him, striking him repeatedly and causing him to "los[e] consciousness about five times." The defendant could not identify those men and stated that police officers, who arrived as he lay on the ground, spoke with his attackers, after which the officers entered a nearby, fire-damaged building.

The defendant further testified that while the officers were inside that building, the men who had just beaten him "removed [his] watch and went through [his] pockets." The defendant stated that he remained hospitalized for about two days after the beating but the court subsequently sustained the State's objections, based on relevancy, to questions asked of the defendant concerning the extent and nature of his injuries. On cross-examination, the defendant denied possessing any of the property which Officer Tarka recovered from his clothing at the hospital. He further denied that the police officers who arrested him removed a watch from his wrist. He also stated that the men who had beaten him removed a key chain and approximately $30 from his pocket and replaced those items with other, unknown property.

After the parties rested on December 15, 1989, the court gave the jury instructions, including, over the defendant's objection, Illinois Pattern Jury Instructions, Criminal, No. 24—25.07 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 24—25.07), which relates to the proper amount of force which may be used in defense of a dwelling. Later that same day the jury returned a verdict of guilty on both the burglary and the looting charges and the court entered judgment on those verdicts. On January 24, 1990, the circuit court sentenced the defendant to a three-year term of imprisonment for the burglary conviction and a two-year term for the looting conviction, both to run concurrently.

On appeal, the defendant raises the following contentions: (1) that the circuit court's denial of his motion for a continuance was an abuse of its discretion which had the effect of denying him effective assistance of counsel; (2) that the court abused its discretion in sustaining the State's objection to his testimony relating to the extent of his injuries; (3) that the court erred in tendering IPI Criminal 2d No. 24—25.07; and (4) that even if we affirm his conviction for burglary, the conviction for looting must be vacated because it is based upon the same act of unlawful entry as the burglary conviction.

OPINION

DENIAL OF THE MOTION FOR A CONTINUANCE

The defendant first argues that the trial court abused its discre-

tion in denying his December 12, 1989, motion for a continuance because his counsel was "forced to go to trial without being able to [either investigate the origin of the fire at the victim's apartment or to obtain the defendant's medical records]" and because his counsel "had seen [his] file for the first time on the day of trial." He also makes the related argument that the court's denial of his motion for a continuance had the effect of denying him effective assistance of counsel. These two arguments are closely related and tend to merge. We will therefore consider them together.

A circuit court's decision to grant or deny a motion for a continuance will not be disturbed absent showings that it clearly abused its discretion and that the defendant suffered prejudice as a result. (*People v. Ward* (1992), 154 Ill. 2d 272, 304, 609 N.E.2d 252, 265; *People v. Wilson* (1993), 254 Ill. App. 3d 1020, 1054-55, 626 N.E.2d 1282, 1306; *People v. Sullivan* (1977), 52 Ill. App. 3d 666, 670, 367 N.E.2d 1042, 1045.) A determination of whether there has been an abuse of discretion depends on whether the movant acted with diligence in attempting to obtain the evidence for which the continuance is sought and whether such evidence would have sufficient relevancy. See *People v. Wilson*, 254 Ill. App. 3d at 1054-55, 626 N.E.2d at 1306 ("When reviewing the exercise of the trial judge's discretion, an appellate court must determine whether the defendant acted diligently to obtain the evidence and whether the evidence would be material and might affect its outcome. *People v. Tillman* (1980), 82 Ill. App. 3d 430, 402 N.E.2d 825"); see also Ill. Rev. Stat. 1989, ch. 38, par. 114—4(e) (now 725 ILCS 5/114—4(e) (West 1992)) (stating that "All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant").

■ We cannot say that the circuit court abused its discretion in denying the defendant's motion for a continuance. First, there is ample basis for the trial court to have reached the conclusion that the defendant's counsel failed to exercise diligence in either investigating the origin of the fire or obtaining the defendant's medical records. Not only had this case been set for trial for over one year, since October 24, 1988, but the December 12, 1989, final trial date was set on October 5, 1989, leaving the public defender's office over two months to conduct such further discovery it considered necessary. The assistant public defender who represented the defendant at trial even acknowledged that his office had not acted diligently when he "apologize[d] to the court for that which ha[d] not been done beforehand."

Second, despite this lack of diligence, the court permitted argu-

ment on the defendant's motion for a continuance rather than denying it without considering the merits. After hearing argument on the motion, the court determined that any additional discovery relating to the fire investigation or the defendant's medical records would likely not yield any sufficiently relevant evidence. The court stated:

"[Q]uite frankly, if I really felt this defendant's rights were being abridged, I would, of course, continue this case. But I do not see anything in what I've heard at this point that makes me believe that the items you have mentioned are matters which would seriously impact upon the [determination of] guilt or innocence as to these matters, or upon counsel's ability to be able to adequately and competently defend Mr. Flores."

Based on the record, we find no compelling reason to take issue with the circuit court's determination that further discovery relating to the fire investigation would not have been likely to yield sufficiently relevant evidence. Simply because the origin of the fire at the victim's apartment was under investigation would not necessarily implicate the defendant in any wrongdoing. Moreover, the State indicated to the court and defense counsel that the June 1, 1988, fire at the victim's apartment had been investigated and ruled accidental. Accordingly, the circuit court could have reasonably concluded that any further discovery would not have yielded relevant evidence. See *People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161, quoting *People v. Ward* (1984), 101 Ill. 2d 443, 455, 463 N.E.2d 696, 702 (stating that " 'A trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty or its possibly unfair prejudicial nature' ").

Similarly, we find no basis for disturbing the circuit court's determination that the defendant's medical records would not have been sufficiently relevant. While it is possible that the defendant's medical records might have tended to corroborate his account of the circumstances leading to his injury, that possibility would have been remote. The injuries which he could have received as a result of a struggle to prevent him from fleeing, such as the one the victim, Jose Almanza, and George Almanza described, could have been consistent with injuries which he could have received as the result of a beating. Significantly, Jose Almanza testified that he may have struck the defendant in the course of that struggle. See *People v. Enis*, 139 Ill. 2d at 281, 564 N.E.2d at 1161.

Beyond this, the fact that the trial judge required that the defendant go to trial on the day in which his then current public defender first appeared on his behalf, without more, would not suffice to compel

a finding that the court abused its discretion. This case would not have required extended time for preparation. It involved a single transaction with only four witnesses whom the defendant's counsel, if he wished, could have interviewed on the day of trial. It did not involve evidence which might necessitate more extended time for preparation, such as complex scientific evidence, expert testimony, or voluminous documentary evidence. (See *People v. Wallace* (1982), 106 Ill. App. 3d 580, 585, 435 N.E.2d 1322, 1326 (stating that "where retention of counsel and trial [are] conducted [on the same day,] there is [not] necessarily ineffective assistance of counsel"); see also *People v. Hayes* (1972), 52 Ill. 2d 170, 174-75, 287 N.E.2d 465, 467 (finding that requiring newly retained counsel to defend an armed robbery case after one day of preparation did not amount to an abuse of discretion).) Moreover, we note that defendant's trial counsel in fact gained approximately one more day for preparation because of the delay necessitated by the defendant's late jury demand.

We also note that the assistant public defender requested a continuance, not to further review his file in the defendant's case as it stood on December 12, 1989, but rather to have additional time to augment that file by conducting further discovery. Contrary to the defendant's assertion in his brief before us, his trial counsel never stated that he required additional time to review the file as it then existed as a basis for his motion for a continuance. In fact, his trial counsel acknowledged that he had reviewed the file and spoken with the defendant, suggesting that he was otherwise prepared for trial. Accordingly, given the circuit court's consideration of the defendant's argument in support of his motion for a continuance, despite his lack of diligence in conducting further discovery, and its finding that any evidence which the additional discovery could have yielded would likely have lacked sufficient relevance, we cannot say that the circuit court abused its discretion in denying his motion for a continuance.

Moreover, even assuming that the trial court had abused its discretion, we could not say that the defendant suffered prejudice as a result. (See *People v. Ward*, 154 Ill. 2d at 304, 609 N.E.2d at 265; *People v. Wilson*, 254 Ill. App. 3d at 1054-55, 626 N.E.2d at 1306; *People v. Sullivan*, 52 Ill. App. 3d at 670, 367 N.E.2d at 1045.) Our review of the record discloses that the defendant's counsel adequately cross-examined the State's witnesses and otherwise competently conducted the defense.

The substantial evidence supporting a finding of guilty also precludes a finding of prejudice. Such evidence included the victim and Jose Zavala's discovery of the defendant inside the victim's apartment, carrying the victim's property; the defendant's admission to

the victim that he entered the apartment for the purpose of taking property; George Zavala's observation of the victim and Jose Zavala's removing the struggling defendant from inside the victim's apartment; the victim's observation of the defendant wearing his wristwatch; and Officer Tarka's recovery of other items of the victim's property from inside the defendant's clothing.

We now consider the defendant's related argument that the circuit court, by its improper denial of his motion for a continuance, deprived him of the effective assistance of counsel. Generally, to establish a claim of ineffective assistance of counsel a defendant must prove, first, that his counsel's representation fell below an objective standard of competence and, second, that, but for that failure, the outcome of his trial or sentencing would have differed. (*People v. Hall* (1993), 157 Ill. 2d 324, 337, 626 N.E.2d 131, 136; see also *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *adopted in People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Courts must entertain a " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *People v. Albanese*, 104 Ill. 2d at 526, 473 N.E.2d at 1255, quoting *Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065-66.

However, an exception to the general rule that the defendant must show actual prejudice resulting from his counsel's errors may sometimes apply. In *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct 2039, the Supreme Court held that in cases where the defendant's "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or where an action by the prosecution or the trial court affects the trial to such an extent that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is slight, prejudice to the defendant is presumed. *United States v. Cronic*, 466 U.S. at 659-60, 80 L. Ed. 2d at 668, 104 S. Ct at 2047; see also *United States v. Berkowitz* (7th Cir. 1991), 927 F.2d 1376, 1381; *People v. Chandler* (1989), 129 Ill. 2d 233, 243, 543 N.E.2d 1290, 1294; *People v. Johnson* (1989), 128 Ill. 2d 253, 267, 538 N.E.2d 1118, 1123-24.

The Supreme Court in *Cronic* identified the denial of a defendant's motion for a continuance which precipitously forces him to trial as a circumstance which may properly give rise to a presumption of the denial of effective assistance of counsel. (*United States v. Cronic*, 466 U.S. at 660-61, 80 L. Ed. 2d at 669, 104 S. Ct. at 2048.) However, the Court also recognized that "every refusal to postpone a criminal trial will not give rise to such a presumption." (*United States v. Cronic*, 466 U.S. at 661, 80 L. Ed. 2d at 669, 104 S. Ct. at 2048.) The Court noted:

"In *Avery v. Alabama*, 308 U.S. 444[, 84 L. Ed. 377, 60 S. Ct. 321] (1940), counsel was appointed in a capital case only three days before trial, and the trial court denied counsel's request for additional time to prepare. Nevertheless, the Court held that since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time. [Citation.] Similarly, in *Chambers v. Maroney*, 399 U.S. 42[, 26 L. Ed. 2d 419, 90 S. Ct. 1975] (1970), the Court refused 'to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel.' [Citation.]" 466 U.S. at 661, 80 L. Ed. 2d at 669-70, 104 S. Ct. at 2048.

"Thus, [the Supreme Court in *Cronic* concluded that] only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." (*United States v. Cronic*, 466 U.S. at 662, 80 L. Ed. 2d at 670, 104 S. Ct. at 2048.) Putting its conclusion in the context of a denial of a motion for a continuance, the Court cited (466 U.S. at 662 n.31, 80 L. Ed. 2d at 670 n.31, 104 S. Ct. 2048 n.31) its decision the previous term in *Morris v. Slappy* (1983), 461 U.S. 1, 75 L. Ed. 2d 610, 103 S. Ct. 1610, in which it held that "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *** [B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. at 11-12, 75 L. Ed. 2d at 619-20, 103 S. Ct. at 1616, quoting *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 11 L. Ed. 2d 921, 931, 84 S. Ct. 841, 849.

▮ Defendant does not argue that his trial counsel rendered ineffective assistance by virtue of his own acts or omissions. He only maintains that, under *United States v. Cronic*, he need not have proved actual prejudice because the circuit court's improper denial of his motion for a continuance deprived his counsel of adequate time to prepare. We note that such a presumption of prejudice as the defendant urges would obviate his inability, as discussed above, to prove prejudice as a result of the denial of his motion for a continuance.

However, we cannot say that the trial court's action in any way denied the defendant effective assistance of counsel. As discussed above, the trial court did not abuse its discretion in denying the defendant's motion for a continuance. It permissibly denied that motion because of his lack of diligence in conducting further discovery

and because of its determination that any evidence which the defendant could have developed through such further discovery would likely not have been sufficiently relevant. Therefore, we cannot say that the circuit court exhibited such "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' " which would justify raising a presumption of ineffective assistance. *Morris v. Slappy*, 461 U.S. at 11-12, 75 L. Ed. 2d at 620, 103 S. Ct. at 1616, quoting *Ungar*, 376 U.S. at 589, 11 L. Ed. 2d at 931, 84 S. Ct. at 849.

We also note that our supreme court has indicated that, because of the potential for abuse, the *Cronic* rule should be cautiously applied. (See *People v. Johnson*, 128 Ill. 2d at 269, 538 N.E.2d at 1125 (stating that, in the context of a presumption of ineffectiveness based on an attorney's admission of his client's guilt, "[i]f we were to accept an automatic ineffectiveness rule, there would be the danger that an unscrupulous defense attorney, especially in a death penalty case, would deliberately concede his client's guilt in order to lay the groundwork for a later reversal").) A reading of *Cronic* such as the defendant urges would permit defense counsel to obtain a continuance at will simply by substituting another lawyer from the same firm or office on the day of trial. Such a reading would not only unreasonably hinder the circuit court in controlling its docket but also would put the State, victims, and witnesses to an unreasonable burden.

## TESTIMONY RELATING TO INJURIES

■ The defendant next argues that the trial court erred in sustaining the State's objection to his testimony regarding the extent and nature of the injuries he received on June 1, 1988. However, since the defendant failed to raise the propriety of that ruling as an issue in his post-trial motion, he has waived further review of it. See *People v. Enoch* (1988), 122 Ill. 2d 176, 185-90, 522 N.E.2d 1124, 1129-31; *People v. Alcazar* (1988), 173 Ill. App. 3d 344, 354, 527 N.E.2d 325, 331.

In any event, we would not have reversed the circuit court's evidentiary ruling because it did not clearly abuse its discretion. (See *People v. Enis*, 139 Ill. 2d at 281, 564 N.E.2d at 1161; *People v. Ward*, 101 Ill. 2d at 455-56, 463 N.E.2d at 702.) As discussed above with respect to the defendant's medical records, evidence relating to the extent of his injuries arguably would have lacked sufficient relevance because of its remoteness. Such remoteness arises from the fact that the defendant could have received similar injuries under the version of events testified to by the State's witnesses or under the version he

testified to. Moreover, also noted above, the overwhelming evidence against the defendant would render any error which may have existed in sustaining the State's objection harmless.

JURY INSTRUCTION

The defendant next argues that the circuit court erred in submitting IPI Criminal 2d No. 24—25.07 to the jury. IPI Criminal 2d No. 24—25.07, as tendered to the jury in this case, read:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to terminate another's unlawful entry into a dwelling."

The defendant maintains that this instruction improperly bolstered the State's case.

■ IPI Criminal 2d No. 24—25.07 applies in situations where the *defendant's* use of force in defense of a dwelling is at issue. The Committee Note to IPI Criminal 2d No. 24—25.07 confirms this by mandating that IPI Criminal 2d No. 24—25.06A be given along with IPI Criminal 2d No. 24—25.07. IPI Criminal 2d No. 24—25.06A, an issues instruction, provides: "Proposition: That the defendant was not justified in using the force which he used." The parties raised no issue concerning the defendant's use of force to terminate an entry into a dwelling. Indeed, it was the victim and Jose Almanza who used such force. Accordingly, the circuit court erred in tendering IPI Criminal 2d No. 24—25.07.

However, any error in giving or refusing to give a jury instruction will not justify a reversal when the evidence in support of the defendant's conviction is so overwhelming that the jury's verdict would not have differed had it been properly instructed. (*People v. Johnson* (1991), 146 Ill. 2d 109, 137, 585 N.E.2d 78, 90; *People v. Austin* (1989), 133 Ill. 2d 118, 124, 549 N.E.2d 331, 333.) Although IPI Criminal 2d No. 24—25.07 was clearly inappropriate in this case, the fact that it was given did not affect the outcome. As noted above, the evidence of the defendant's guilt was overwhelming. Beyond this, the issue for the jury in this case was not whether the victim and Jose Almanza exercised excessive force to terminate or defend against an unlawful entry, but rather whether the defendant unlawfully entered the victim's apartment in the first instance. Here the defendant testified that he never entered or attempted entry into the apartment in question but that he was attacked while walking down the street. Consequently, the giving of IPI Criminal 2d No. 24—25.07, while erroneous, was merely superfluous and irrelevant, but by no means prejudicial.

## BURGLARY AND LOOTING CONVICTIONS

The defendant finally argues that his convictions for both burglary and looting cannot stand because both are predicated on the same physical act of entering the victim's apartment. He maintains that under the one-act-one-crime rule set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, his conviction for looting must be vacated.

■ We note that the defendant has waived review of this issue also by failing to object to the entry of judgment on both verdicts or to challenge the propriety of both convictions in his post-trial motion. (See *People v. Enoch*, 122 Ill. 2d at 185-90, 522 N.E.2d at 1129-31; *People v. Alcazar*, 173 Ill. App. 3d at 354, 527 N.E.2d at 331.) However, as discussed below, even if the defendant had preserved this issue for appeal, we would not have found the convictions for both burglary and looting improper.

In *People v. King*, our supreme court held:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.)

Thus, under the rule set forth in *King*, "if one of two offenses is not a lesser included offense of the other, both convictions may stand unless each is 'carved from the same physical act.' " *People v. Jones* (1986), 148 Ill. App. 3d 133, 144, 498 N.E.2d 772, 779.

A person commits the offense of burglary "when without authority he knowingly enters \*\*\* a building \*\*\* *with intent to commit therein a felony or theft.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a) (now 720 ILCS 5/19—1(a) (West 1992)).) A person commits looting "when he knowingly without authority of law or the owner enters any home or dwelling \*\*\* in which normal security of property is not present by virtue of a \*\*\* fire \*\*\* *and obtains or*

exerts control over property of the owner." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 42—1 (now 720 ILCS 5/42—1 (West 1992)).

The defendant acknowledges that looting is not a lesser included offense of burglary. A conviction for looting would require proof that the defendant obtained control over property whereas the offense of burglary lacks such a requirement. The defendant need only enter with the requisite intent to commit a felony or theft within; he need not actually exert control over the owner's property to complete the burglary. See Ill. Rev. Stat. 1987, ch. 38, par. 2—9(a) (now 720 ILCS 5/2—9(a) (West 1992)) (stating that an included offense "[i]s established by proof of the same or less than all of the facts or a less culpable mental state").

The defendant yet maintains that the convictions for burglary and looting are improper because they are both based on the same physical act of an unlawful entry into the victim's apartment. However, although these two offenses have the element of unlawful entry in common, they are not otherwise completed by the same physical act. The offense of burglary is complete once an unlawful entry is made with the requisite intent to commit a theft or felony inside the premises entered. Looting, however, is not complete until, after an unlawful entry has been made, the defendant commits the additional act of obtaining or exerting control over the owner's property.

Thus, when the defendant entered the victim's apartment, he had only committed burglary at that point. (See *People v. Toolate* (1984), 101 Ill. 2d 301, 308, 461 N.E.2d 987, 990 (stating that "proof of unlawful breaking and entering is sufficient to infer the intent to commit theft").) Only by committing the additional act of exerting control over the victim's property, *e.g.*, holding the saw, drill, and purse, did he also commit looting. (See *People v. Jones*, 148 Ill. App. 3d at 145, 498 N.E.2d at 779 (holding that residential burglary and home invasion are not based on the same physical act because the common element of unlawful entry does not complete the offense of home invasion); *People v. Snow* (1984), 124 Ill. App. 3d 955, 963, 464 N.E.2d 1262, 1267-68 (same).) Accordingly, since the defendant's burglary and looting convictions are not based on the same physical act, the circuit court properly entered judgment on both verdicts.

## CONCLUSION

For the reasons discussed above, the defendant's convictions for

burglary and looting are affirmed.

Affirmed.

McNULTY and O'BRIEN,[1] JJ., concur.

---

[1]Prior to his retirement, Presiding Justice Murray heard the oral argument in this appeal. Following his retirement, Justice O'Brien was substituted for Justice Murray on the panel of this appeal and has listened to the tape of the orals and has read the briefs.