# Illinois Official Reports

## Appellate Court

---

### *In re D.M.*, 2020 IL App (1st) 200103

---

| | |
|---|---|
| Appellate Court Caption | *In re* D.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. A.M., Respondent-Appellant). |
| District & No. | First District, First Division<br>No. 1-20-0103 |
| Filed | August 10, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-JA-0770; the Hon. Richard Stevens, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Amy P. Campanelli, Public Defender, of Chicago (Suzanne Isaacson, Assistant Public Defender, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Victoria Kennedy, Assistant State's Attorney, of counsel), for the People.<br><br>Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Carrie Fung, of counsel), guardian *ad litem*. |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

## OPINION

¶ 1     Respondent A.M., the father of minor D.M., appeals the trial court's order denying his motion for a continuance made just before the court proceeded with a trial to terminate parental rights. A.M. contends that the rejection of his motion for a continuance violated his statutory right to counsel and denied him due process of the law. Finding no abuse of discretion, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On September 8, 2016, just two months after D.M. was born, the State filed a petition for adjudication of wardship. In the petition, the State named respondent A.M. as D.M.'s father. However, paternity was not legally established at that time. The same day that the State filed the petition for an adjudication of wardship, the Cook County Public Defender's Office was appointed to represent respondent A.M. on the basis that he was D.M.'s putative father.

¶ 4     In April 2017, the public defender's office filed a motion to withdraw as A.M.'s counsel. In its motion to withdraw, the public defender's office explained that "Respondent-Father has not attended several scheduled court dates, including November 03, 2017, December 21, 2017, and February 07, 2017." The public defender's office further explained in its motion that "Respondent-Father has not had contact with [the appointed] attorney since September 08, 2016," which was the day the attorney was appointed for A.M. seven months earlier, despite the attorney's efforts to contact him. Therefore, due to A.M.'s unavailability, the attorney concluded that the public defender's office could not fulfill its role of representing A.M.'s interests in the proceedings.

¶ 5     In July 2017, D.M. was adjudicated abused and neglected. The trial court concluded that D.M. was abused and neglected because he was a drug-exposed infant, was subject to an injurious environment, and was at substantial risk of physical injury. The trial court explained that, among other things, its finding was supported by the fact that D.M. was born testing positive for drugs and that his mother was not engaged in services or treatment. At that time, A.M. had not been assessed for parental fitness, and paternity for D.M. had not yet been legally established. A.M. did not appear in court for the proceedings or ever challenge the court's conclusion that D.M. was an abused and neglected minor.

¶ 6     As the case proceeded towards establishing permanency for D.M., the court received updates from the parties regarding the status of the case and the status of the interested persons involved. For example, at a case management conference on April 4, 2018, the court concluded that D.M. would continue to live in a preadoptive home, pending a determination on the termination of parental rights, and it noted in its written order that day that the "mother and putative father (A.M.) have not engaged in services and are not visiting consistently."

¶ 7     D.M.'s mother was defaulted in the case for failing to participate. Her appointed attorney also withdrew from representation due to her lack of cooperation and interest in the case. The

attorney was later reappointed for D.M.'s mother but then withdrew a second time. D.M.'s mother never made any effort to participate in the case after her counsel withdrew for the second time in May 2018.

¶ 8    D.M.'s mother has four other children, none of which are in her care or custody. Both D.M. and his mother tested positive for drugs when he was born. D.M.'s mother also admitted to using drugs in the months just after D.M. was born. D.M.'s mother was diagnosed with bipolar disorder and other mental health issues, and she failed to complete drug treatment or engage in mental health services. She failed to visit D.M. even though the trial court had granted her limited visitation. Throughout the proceedings, D.M. was in preadoptive foster care with his biological mother's cousin who wants to continue to support and care for him and adopt him.

¶ 9    In September 2018, the State filed the operative supplemental petition to terminate parental rights. As to A.M., the State alleged that he had abandoned D.M., failed to maintain a reasonable degree of interest in the child's welfare, deserted the child, and failed to make reasonable efforts to correct the conditions that led to the child's removal. The State further alleged that A.M. had evidenced an intent to forgo parental rights by failing to visit the child for over a year or communicate with the child or the caseworkers.

¶ 10    On October 16, 2018, shortly after the State's supplemental petition to terminate parental rights was filed, the public defender's office was reappointed to represent A.M. The same day that the public defender's office was reappointed to represent A.M., the trial court also made a legal finding that A.M. "is the father of minor [D.M.]" A.M. had signed a voluntary acknowledgement of paternity. The trial court also noted at that same court appearance that D.M.'s parents "are not engaged in services or visiting with [D.M.]."

¶ 11    The case was set for a hearing for the termination of parental rights on May 22, 2019. A.M. was unable to appear because he was accompanying one of his other children to the emergency room. The parties agreed to try to resolve the case in mediation, and the court entered an order to that effect. The court also set a future date for a termination of parental rights hearing in case the parties were not able to resolve the case in mediation.

¶ 12    A.M. did not appear at the scheduled mediation. The mediation session, therefore, did not occur. On July 10, 2018, the court set the case for a termination of parental rights trial to be held September 18, 2019. The case was later continued until December 17, 2019, for the trial on the issue of terminating parental rights.

¶ 13    When the trial court called the case for trial on December 17, 2019, the State and the public guardian answered ready, but counsel for A.M. responded that she was not ready for trial. Between the time the public defender's office was reappointed to represent A.M. on October 16, 2018, and the day of the trial, December 17, 2019, A.M. had been represented by Assistant Public Defender Jeremy Lemmons. However, at trial, Assistant Public Defender Carolyn Howard appeared on behalf of A.M.

¶ 14    Howard informed the court that she was not prepared to go forward with the trial.

> "I'm new to the case, so the file hasn't actually transitioned to me yet. This will be my first time making an appearance on it. I don't actually have the file, so I need time to prepare and time to actually get the file copied for me from the State or the GAL."

Howard made an oral motion requesting a continuance of the trial date. Howard also informed the court that she had not yet had any contact with A.M. A.M. was not present in court on the day of the scheduled trial. After some discussion, the caseworker informed the court that A.M.

had not appeared since the very first court appearance in the case in 2016.[1] Noting the importance of resolving cases involving the legal parentage of abused and neglected children in a timely fashion and the fact that a brand new attorney showed up and made an oral motion for a continuance on the day of trial, the trial court denied the motion for a continuance.

¶ 15    The case went forward with the trial on the termination of parental rights. After the trial court heard testimony and accepted exhibits into evidence, it found both parents to be unfit. As to A.M., the trial court grounded its finding on a lack of reasonable interest, concern, and responsibility for the minor's welfare; lack of reasonable efforts or progress; and A.M.'s proven intent to forgo parental rights. The trial court subsequently found in the second portion of the proceedings that it was in the best interests of D.M. that parental rights be terminated.

¶ 16    After the unfitness stage of the hearing, Ms. Howard stated that she objected "on behalf of Jeremy Lemmons, the attorney that is actually assigned to this case." Ms. Howard stated that she "had an opportunity to look up this case, and [that she was] not even assigned to this case," so she was "standing in for Jeremy Lemmons." After the best interests stage of the hearing, Ms. Howard reiterated that she was just the "stand-in attorney," a conflicting position with what she had told the court before trial in support of her motion for a continuance where she stated the case was newly assigned to her. Ms. Howard did not inform the court as to why Mr. Lemmons did not appear, nor did she state when he would be available to try to the case. No motion to reconsider or other posttrial motion was filed.

¶ 17    A.M. now appeals the judgment, arguing that the trial court erred when it denied the motion for the continuance. A.M. contends that the denial of the continuance deprived him of the right to counsel that is statutorily granted to him by the Juvenile Court Act of 1987 (705 ILCS 405/1-5(1) (West 2016)). A.M. further contends that the denial of the continuance deprived him of his right to procedural due process.

¶ 18                                II. ANALYSIS

¶ 19    Respondent A.M. argues that the trial court abused its discretion in denying his motion for a continuance. A.M.'s position is that "the court's denial of a continuance had the effect of violating A.M.'s rights to counsel and to due process of the law." Although A.M. repeatedly states that the trial court abused its discretion, he also, without any added analysis, opines that a *de novo* standard of review is appropriate because the fundamental parental liberty interest is at issue. So we begin by addressing the appropriate standard for our review.

¶ 20    It is an axiomatic point of law that whether to grant a continuance is in the sound discretion of the trial court. *Andersonville South Condominium Ass'n v. Federal National Mortgage Co.*, 2017 IL App (1st) 161875, ¶ 28. Thus, on appeal, we do not overturn a trial court's decision to deny a continuance unless the trial court's decision to deny that continuance constitutes an abuse of discretion. *Southwestern Illinois Development Authority v. Masjid Al-Muhajirum*, 348 Ill. App. 3d 398, 402 (2004). A trial judge abuses his discretion when he makes a ruling that is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view. *Andersonville South*, 2017 IL App (1st) 161875, ¶ 28.

---

[1] The caseworker's statement that A.M. had only appeared in court once, at the first court proceeding in the case, is refuted by the record. The record reveals that A.M. appeared in court on at least one other occasion in the three-year pendency of the case.

¶ 21    Aside from one stray comment about the *de novo* standard of review applying to this case at the beginning of his brief, [2] A.M. does not mention the *de novo* standard of review again. A.M. does not develop any argument concerning the applicable standard of review. He does, however, point to a recently decided case in which we applied a *de novo* standard of review in a termination of parental rights proceeding (citing *In re J.M.*, 2020 IL App (2d) 190806, ¶ 37). We are unconvinced that the *de novo* standard should apply to the circumstances of this case.

¶ 22    In *In re J.M.*, the father was incarcerated and was not able to attend court proceedings. *Id.* ¶ 31. This court held that the motion for the continuance was enmeshed with the father's due process rights, and thus, the court applied a *de novo* standard of review to analyze the father's due process rights. *Id.* ¶ 37. The circumstances of this case are significantly distinguishable from *In re J.M.* Here, there are no compelling outside circumstances that necessitated a continuance or that otherwise prohibited the father or his attorney from participating in the case. Our holding in *J.M.* was based on the fact that the father was "not *able* to be present in court." (Emphasis added.) *Id.* ¶ 31. The events leading up to the motion for a continuance in this case demonstrated ordinary lack of attentiveness and concern for the case by both A.M. and his attorney. A.M. has never alleged that there was any impediment to him participating in the proceedings other than his own absence.

¶ 23    To put a finer point on it, we reject A.M.'s contention that a *de novo* standard of review should apply to the denial of a motion for a continuance simply because the case involves the termination of parental rights. This court has repeatedly applied the abuse of discretion standard in reviewing a party's claim that the trial court erred in denying a continuance in cases involving the termination of parental rights. See, *e.g.*, *In re Tashika F.*, 333 Ill. App. 3d 165, 169 (2002); *In re Anaya J.G.*, 403 Ill. App. 3d 875, 882 (2010); *In re S.W.*, 2015 IL App (3d) 140981, ¶¶ 31-32. While there may be certain circumstances in a termination of parental rights case that warrant a less deferential standard of review, we find no such circumstances in this case, and we reject the notion that a *de novo* standard should apply solely on the basis that parental rights are involved.

¶ 24    In this case, whether the continuance should have been allowed required an assessment of numerous factual considerations. It is not a yes or no question that can be appropriately decided as a matter of law, nor are we in a position to ably sit in *de novo* review and assess the propriety of every ruling a trial judge makes when it comes to the functioning of his or her courtroom. Without any substantive argument from A.M. on this issue, we decline to hold that *de novo* review is appropriate in this case, and we find that the abuse of discretion standard applies.

¶ 25    Under most circumstances, requests for continuances on the day of trial need not be allowed. *Sinram v. Nolan*, 227 Ill. App. 3d 241, 243 (1992) ("Our legal system cannot work efficiently if continuances are readily available on the day of trial."). A change in attorneys just before trial does not require the trial court to grant a continuance. *In re Marriage of Yakin*, 107 Ill. App. 3d 1103, 1113 (1982); see also *People v. Flores*, 269 Ill. App. 3d 196, 201 (1995). A.M. has pointed to nothing in the record that could justify a finding that the trial court did not have the discretion to deny his motion for a continuance.

---

[2]A.M. did not file a reply brief in this case. Had he done so, he could have developed some argument on this issue that would have aided our analysis. Instead, he stands on the single sentence in his opening brief that lacks substantive analysis.

¶ 26    As A.M. points out, the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2016)) grants parents the right to counsel in proceedings in which the State seeks a termination of their parental rights. *Id.* § 1-5(1). A.M. contends that his statutory right to counsel was violated in this case because he was denied the effective assistance of counsel when the trial court denied his attorney's motion for a continuance, leaving him with an attorney who was unfamiliar with the case. A.M.'s argument leaves out significant facts that led the trial court to deny the continuance here.

¶ 27    A.M. was appointed counsel on two separate occasions in this case in conformity with the Juvenile Court Act. The first time that counsel was appointed for A.M., the public defender's office sought to withdraw, explaining that A.M. failed to attend several scheduled court dates, citing three specific court appearances in which A.M. did not show up. The public defender's office further explained that it needed to withdraw from representing A.M. because A.M. did not have contact with the appointed attorney for the entire seven-month period after the attorney was appointed, despite the attorney's efforts to contact A.M. The public defender's office was granted leave to withdraw from the representation.

¶ 28    Then, when A.M. finally appeared in court more than two years later, the public defender's office was reappointed. But even at the most critical junctures of the case, as the hearing for termination of parental rights neared, A.M. was absent. The court-ordered mediation did not occur as scheduled because A.M. failed to appear. A.M. then failed to appear at the termination hearing. The record contains no explanation for A.M.'s absence from the critical proceedings.

¶ 29    The trial court explained that simply failing to appear in court without any explanation was not a proper basis for a continuance. The trial court stated that lack of preparedness was not an adequate excuse to justify delaying the proceedings. The trial court explained that the typical practice for seeking the continuance of a trial was to file a written motion in advance of the trial date rather than to make an oral motion when the case was called for the trial to begin. The court noted that a change in attorneys over the length of a long case was a foreseeable issue. The court also stated that its docket did not allow for another trial date to be set for this case in the near future and that it viewed the prompt disposition of cases involving abused and neglected minors as important. In light of all of those considerations, the trial court found that A.M. was not entitled to a continuance.

¶ 30    For claims of ineffective assistance of counsel in parental rights proceedings under the Juvenile Court Act, Illinois courts look to the framework used in criminal cases. *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 32. However, an important distinction between criminal cases and cases affecting parental rights under the Juvenile Court Act is that there is a constitutional right to counsel in criminal cases while the right to counsel in parental rights cases derives from statute. *In re S.G.*, 347 Ill. App. 3d 476, 479 (2004). Under the familiar *Strickland* standard for evaluating claims of ineffective assistance of counsel, one must show " 'both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result would have been different.' " *Charles W.*, 2014 IL App (1st) 131281, ¶ 32 (quoting *S.G.*, 347 Ill. App. 3d at 479). The prejudice prong of the *Strickland* analysis requires a reasonable probability, not just a mere possibility, of a different outcome. *Id.*

¶ 31    A.M. argues that we should dispense with the requirement that he show prejudice under *Strickland* and instead hold that his counsel's performance was so deficient that prejudice should be presumed (citing *United States v. Cronic*, 466 U.S. 648, 659-61 (1984)). A.M.

acknowledges that *Cronic* only expressly applies in the criminal context, but he urges us to expand the application of *Cronic* to termination of parental rights cases and hold that prejudice need not be shown where counsel's representation is wholly deficient.

¶ 32     We have already had the opportunity to address the applicability of the holding of *Cronic* in termination of parental rights proceedings, and we declined to expand its holding to such cases. See *In re C.C.*, 368 Ill. App. 3d 744, 748 (2006) ("We decline to extend the *Cronic* test to termination proceedings."); see also *In re Jamarqon C.*, 338 Ill. App. 3d 639, 644 (2003) (holding that a showing of prejudice was required when a parent appeals the denial of a motion for a continuance in a termination of parental rights case). The rationale for applying *Cronic* in the criminal case context under the sixth amendment is not present in this case. A.M. had counsel, and had A.M. appeared or made contact with his attorney, he could have participated in the proceedings. Instead, A.M. showed a complete lack of interest in the proceedings at all critical stages. We see no reason that A.M. should be relieved of the burden of showing prejudice when the trial court denied an oral motion for a continuance after the trial was called to begin when his only impediment to participating in the proceedings was his own lack of interest. See *People v. Tuduj*, 2014 IL App (1st) 092536, ¶¶ 101-02.

¶ 33     The operative petition for termination of parental rights alleged, among other things, that A.M. abandoned D.M.; that he failed to maintain a reasonable degree of interest, concern, or responsibility for D.M.; that he deserted D.M.; and that he evidenced an intent to forgo parental rights by failing to visit, communicate with, and/or maintain contact with D.M. for over a year. A.M. does not dispute that he was given notice of the petition to terminate parental rights and all the other proceedings attendant in a termination of parental rights case. But he did not appear for those critical proceedings, most notably the termination hearing. During the three years that the case was pending with numerous court appearances made by the parties, A.M. appeared just twice. After the operative petition to terminate parental rights was filed, A.M. appeared in court, but then he did not appear for over a year—through the point at which his parental rights were terminated. A.M. has made no showing that he acted with any diligence whatsoever at any point of the proceedings in order to protect his rights or to otherwise defend against the termination of his parental rights.

¶ 34     Furthermore, A.M. has not even attempted to make out a claim of prejudice. On appeal, he does not contend that the trial court's unfitness or best interests findings were against the manifest weight of the evidence. A.M. has never even attempted to state what he might have produced that could have led to a different result if he had been granted a continuance. Overwhelming evidence was presented at trial that both A.M. and D.M.'s mother had abandoned D.M. and that they had evidenced an intent to forgo parental rights. In fact, the mediation was set in the case because A.M. had suggested he was considering voluntarily relinquishing his parental rights.

¶ 35     A.M. only visited D.M. one time, for 45 minutes, during the three years this case was ongoing, despite there being a court order providing for visitation. Even after a caseworker arranged visitation for A.M., he failed to show up for the visit. A.M. failed to contact the caseworkers to work towards reunification, so A.M. was never even assessed by the caseworkers to determine if he could be a fit parent. A.M. never engaged in any of the services to embark on reunification. The caseworkers in this case repeatedly rated A.M.'s progress as unsatisfactory. A.M. similarly failed to make contact with his attorneys, resulting in the public defender's office having to withdraw from the case due to A.M.'s lack of interest. Frankly,

based on the record, the judgment in this case was not the result of any error by the attorney. But even if we assume A.M.'s attorney should have been better prepared or should have taken a better course of action to seek a continuance, the ineffective assistance of counsel claim would fail for lack of a showing of prejudice. See *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶ 44.

¶ 36    As the trial court in this case recognized, the Juvenile Court Act prioritizes the prompt disposition of cases concerning abuse and neglect of minors. 705 ILCS 405/2-14 (West 2016). In fact, the General Assembly has observed that the delay in promptly adjudicating cases concerning child abuse and neglect cases "can cause grave harm to the minor." *Id.* § 2-14(a). Thus, the Juvenile Court Act requires Illinois courts to "act in a just and speedy manner to determine the best interests of the minor." *Id.* A requirement that a continuance be granted on the day of trial without any justifiable cause for the delay would run counter to the General Assembly's expressly stated legislative policy. While we are certainly mindful of the fundamental interest a parent has in retaining his parental rights, abused children also have an important right to have adjudicatory proceedings commenced and concluded in a timely fashion. As we observed in *Flores*, "[a] reading of *Cronic* such as the defendant urges would permit defense counsel to obtain a continuance at will simply by substituting another lawyer from the same firm or office on the day of trial." *Flores*, 269 Ill. App. 3d at 206. The trial court did not abuse its discretion in denying A.M.'s motion for a continuance, and A.M. has failed to demonstrate that he is entitled to relief for ineffective assistance of counsel.

¶ 37    A.M. also argues that the trial court's denial of his motion for a continuance deprived him of his right to procedural due process. He contends that the right to counsel contemplates a party having an attorney that is familiar with the case and, thus, "the continuance should have been granted for assigned, prepared, and effective counsel to appear on the father's behalf."

¶ 38    We reject A.M.'s contention that his constitutional due process rights were violated on the basis that he should have been granted a continuance so his attorney could have been better prepared. Our supreme court has directed us to " 'avoid constitutional questions where the case may be decided on other grounds.' " *In re Detention of Swope*, 213 Ill. 2d 210, 218 (2004) (quoting *In re S.G.*, 175 Ill. 471, 479 (1997)); see also *In re S.B.*, 2015 IL App (4th) 150260, ¶¶ 21-22. Under the circumstances here, any relief A.M. might be entitled to for a violation of his statutory right to counsel can be adequately addressed in a claim for ineffective assistance of counsel.

¶ 39    Procedural due process guarantees a person who might be deprived of a right (1) notice of the proceedings and (2) an opportunity to be heard. *In re D.P.*, 319 Ill. App. 3d 554, 558 (2001). Here, there is no dispute that A.M. had notice of the proceedings. Similarly, there can be no dispute that he had an opportunity to be heard—he simply chose to forgo that opportunity when he decided not to be present for the trial and for other important stages of the case. Frankly, a party cannot be absent for all of the critical junctures of the case without explanation and then complain that he did not have an opportunity to be heard. He cannot complain that his constitutional due process rights were inadequately protected when he did not take the slightest steps to assert or protect his rights but instead abandoned them repeatedly throughout the case. In the context of proceedings to terminate parental rights, due process is achieved when the State complies with the provisions of the Juvenile Court Act and fundamental fairness. *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶ 30. A.M. has failed to demonstrate that his due process

rights were violated.

¶ 40                                    III. CONCLUSION

¶ 41          Accordingly, we affirm.

¶ 42          Affirmed.