NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240941-U

NO. 4-24-0941

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 21JA277 |
| v. | ) | |
| Tiffany L., | ) | Honorable |
| Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's judgment terminating respondent's parental rights, concluding (1) the court's unfitness finding was not against the manifest weight of the evidence and (2) respondent was not deprived of her right to counsel.

¶ 2    In February 2024, the State filed a petition to terminate the parental rights of respondent, Tiffany L., to her minor child, M.R. (born July 2021). In June 2024, the trial court entered an order terminating respondent's parental rights. The court also terminated the parental rights of the minor's father, Jerid R., who is not a party to this appeal.

¶ 3    Respondent appeals, arguing the trial court's unfitness finding was against the manifest weight of the evidence and she was deprived of her right to counsel.

¶ 4    For the reasons that follow, we affirm.

¶ 5                                    I. BACKGROUND

¶ 6                            A. The Opening of M.R.'s Case

¶ 7        In July 2021, the State filed a petition alleging M.R. was a neglected minor under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020)). Respondent tested positive for amphetamines and methamphetamine while pregnant with M.R. In the dispositional hearing report, it was noted respondent had been indicated for domestic violence and methamphetamine use by the Illinois Department of Children and Family Services (DCFS) in 2020. At the arraignment in August 2021, Assistant Public Defender (APD) Dana Kelly was appointed to represent respondent. On November 12, 2021, the trial court entered an adjudicatory order finding M.R. neglected. That same day, the court entered a dispositional order finding respondent unfit due to her substance abuse issues, history of domestic violence, and a prior finding of unfitness. The court made M.R. a ward of the court and placed his guardianship and custody with DCFS.

¶ 8        In February 2024, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was unfit in that she failed to make reasonable progress toward the return of M.R. during the nine-month period following the adjudication of neglect, spanning February 1, 2023, to November 1, 2023. See 750 ILCS 50/1(D)(m)(ii) (West 2022). After being served by publication and failing to file an answer to the petition, the trial court defaulted respondent on March 27, 2024.

¶ 9        The case was scheduled for fitness and best-interest hearings on June 20, 2024.

¶ 10                               B. The Fitness Hearing

¶ 11       When the case was called for a fitness hearing on June 20, 2024, the following individuals appeared in court: Fan Wu (the State), Christopher Frericks (guardian *ad litem*

(GAL)), Greta Schmollinger (caseworker), and Nicole D. (foster mother appearing via Zoom). APD Kelly and respondent were not present. The trial court noted both parents were defaulted on March 27, 2024, and neither party had filed any pleadings to remedy the defaults or otherwise appear. The court proceeded with a prove-up hearing on the adjudication of unfitness, where the State proffered certain evidence and asked the court to take judicial notice of the pleadings and orders on file.

¶ 12                    1. *The State's Proffer and Request for Judicial Notice*

¶ 13          The State apprised the court both parents were defaulted on March 27, 2024, and neither parent had filed any pleadings to try and remedy the default. The State asked the trial court to take judicial notice of the pleadings and court orders on file. Most notably, the State asked the court to take judicial notice of the March 17, 2023, order wherein M.R.'s permanency goal was changed, due to the parents' lack of engagement, from return home to substitute care pending court decision. The State proffered it would call two caseworkers, Melanie Franklin and Katrina Loudenback, from the Center for Youth and Family Solutions. Franklin, the caseworker from February 2023 to June 2023, drafted a service plan in March 2023 which required respondent to engage in domestic violence services, a mental health assessment, a substance abuse assessment, drug drops, parent/child visits, and parenting classes. Respondent completed the domestic violence assessment but failed to complete any recommended treatment. A referral was made for a substance abuse assessment in March 2023, yet respondent failed to complete the assessment. A certified copy of respondent's chemical dependency records was tendered, reflecting an assessment had been completed in October 2023. Respondent was rated unsatisfactory for failing to complete the drug drops, as well as for failing to complete parenting classes. The State further proffered Loudenback, the caseworker from July 2023 to November

2023, would testify she had minimum contact with respondent. Respondent did not follow the service plan, and her visits with M.R. were inconsistent. Respondent remained unfit during the entire nine-month period.

¶ 14                                  2. *Testimony of the GAL*

¶ 15          GAL Frericks testified M.R. had already been in care for about a year and a half at the beginning of the relevant nine-month period. At the time of the fitness hearing, respondent still had not engaged in a substantial number of services, including a mental health assessment and treatment, drug and alcohol treatment, drug drops, and any other recommendations. GAL Frericks noted any progress made was not reasonable given the length of time M.R. had been in care (since his birth) and requested the court so find.

¶ 16                                  3. *The Trial Court's Unfitness Finding*

¶ 17          The trial court agreed with the State and the GAL that respondent was unfit, as she did not make reasonable progress during the relevant nine-month period of February 1, 2023, through November 1, 2023.

¶ 18                                  C. The Best-Interest Hearing

¶ 19          After adjudicating respondent unfit, the trial court proceeded directly to a best-interest hearing. Neither the record nor the report of proceedings reflects the presence of either respondent or APD Kelly at the hearing.

¶ 20          Schmollinger, M.R.'s current caseworker, testified the foster parents were engaged with M.R. and his sister (who also lived with M.R.'s foster parents) and promoted a positive environment. M.R. was developmentally on track, and both foster parents wished to provide M.R. and his sister with permanency through adoption. M.R.'s relationship with his foster parents was nurturing and supportive. M.R. was very attached to both foster parents and

would seek comfort and affection from them after visits with his biological parents. Ultimately, Schmollinger opined it was in M.R.'s best interest to terminate respondent's parental rights and for the foster parents to become his adoptive family.

¶ 21 The trial court noted M.R. had been in care for almost three years (35 months) and lived with his foster family his entire life. Fifteen months earlier, the goal for M.R. changed to substitute care pending court decision. The trial court noted, since the goal was changed to substitute care, respondent failed to appear at all court appearances, including multiple permanency reviews, the arraignment on the petition to terminate, and the fitness and best-interest hearings. The court found M.R.'s physical safety and welfare, development of identity, family ties, sense of attachment, sense of security and familiarity, continuity of affection, and the least disruptive placement all weighed in favor of terminating respondent's parental rights. M.R.'s need for permanency only increased with the time he was in care. More importantly, the risk to M.R. rested in him returning to respondent's care when she clearly demonstrated she would not engage in the required treatment or counseling services. Consequently, the court found M.R.'s best interest was served by terminating respondent's parental rights. The goal of the case was changed to adoption.

¶ 22 This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 On appeal, respondent only argues the trial court's unfitness finding was against the manifest weight of the evidence. She does not challenge the best-interest finding. Respondent further claims she was deprived of her right to counsel.

¶ 25 A. The Unfitness Finding

¶ 26 Parental rights may not be terminated without the parent's consent unless the trial

court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). A parent may be found unfit if she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2022). This court has defined "reasonable progress" as follows:

> " 'Reasonable progress' is an objective standard which exists when the [trial] court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphases omitted.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the [trial] court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *Id.*

¶ 27　　　　Here, the evidence established respondent failed to make reasonable progress toward the return of M.R. to her care during the relevant period. In addition to complying with

standard conditions, respondent was required to obtain a drug and alcohol assessment and participate in recommended treatment, comply with four random drug drops per month, submit to a mental health evaluation and follow all recommendations, successfully complete parenting classes and a domestic violence course, and engage in counseling. Respondent missed almost all drops and was not successful in undertaking any of the recommended treatment.

¶ 28    In April 2023, new substance abuse and mental health referrals were put in place in hopes respondent would complete the new assessments and engage in the required services since she had not done so up to that point. In May 2023, respondent was discharged from parenting classes due to missing classes. The parenting instructor attempted to reschedule the missed classes, but respondent even missed the make-up classes. A further review of the record shows there were 20 court appearances and respondent failed to appear at 14 of these hearings, including when she failed to appear after her attorney told her she would be defaulted. As the State proffered, Loudenback had minimal contact with respondent, respondent's visits with M.R. were inconsistent, and she had not followed the service plan. The evidence established respondent had not made sufficiently demonstrable progress in her services for the trial court to be able to return M.R. to her care. Accordingly, this court concludes the trial court's finding of unfitness was not against the manifest weight of the evidence.

¶ 29                    B. Right to Counsel

¶ 30    Parents have a fundamental liberty interest in the care, custody, and control of their children, which is protected by the due process clause of the fourteenth amendment of the United States Constitution. U.S. Const. amend. VIX, § 1; *In re M.H.*, 196 Ill. 2d 356, 365 (2001). Procedures involving the termination of parental rights must comply with the requirements of due process. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Although there is no constitutional

right to counsel in proceedings to terminate parental rights, section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2022)) establishes a statutory right for a parent to be represented by counsel. This right to counsel attaches when the State files an action under the Juvenile Court Act. *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 467 (2002).

¶ 31 Contrary to what respondent alleges, her right to counsel was not violated. Counsel was appointed and appeared at numerous court dates to represent respondent. APD Kelly never filed a motion to withdraw as counsel and even filed the notice of appeal after her client's parental rights were terminated. The cases cited by respondent are inapposite because they all involve the failure to *appoint* counsel at a shelter care hearing. In this case, respondent had appointed counsel. Therefore, the proper claim to bring in this situation would have been an ineffective assistance of counsel claim. See *In re Br. M.*, 2021 IL 125969, ¶ 42. Because such a claim was not raised in this appeal, it is considered forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). However, forfeiture is a limitation on the parties and not on the reviewing court, and the court's concern in reaching a just result may override considerations of waiver and forfeiture. *In re S. P.*, 2019 IL App (3d) 180476, ¶ 40. As such, we will consider it here.

¶ 32 "Illinois courts apply the same standard utilized in criminal cases to determine a parent's claim of ineffective assistance of counsel appointed under the Juvenile Court Act." *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶ 39. To prevail on a claim of ineffective assistance of counsel, a respondent must establish (1) trial counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance so prejudiced the respondent that but for counsel's errors, the outcome of the trial likely would have been different. *Strickland*

*v. Washington*, 466 U.S. 668, 687, 695 (1984). Failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 33        Further complicating our review of this matter are the deficiencies in the record in this case. "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. The record on appeal only contains transcripts from two hearings, even though 13 of the 20 hearings were recorded. Discrepancies were also noted on different court orders when consulting the record on appeal. This court's attempts to resolve the discrepancies were hampered because numerous transcripts were not part of the record, nor was sufficient evidence outlined in appellant's brief.

¶ 34        Despite the foregoing, this court was able to discern that APD Kelly failed to appear at five court hearings, including, most egregiously, the fitness and best-interest hearings. There are no pleadings on file requesting a continuance. The record contains no explanation for APD Kelly's absence from these critical stages of the proceeding, and there was not even an acknowledgement of counsel's absence by the trial court. This conduct is troubling and falls below an objective standard of reasonableness. Nonetheless, even though counsel was not present, the results in this case would not have been any different. See *In re D.M.*, 2020 IL App (1st) 200103, ¶ 30. "The prejudice prong of the *Strickland* analysis requires a reasonable probability, not just a mere possibility, of a different outcome." *Id.*

¶ 35        The evidence in this case overwhelmingly supports the trial court's decisions regarding respondent's unfitness and M.R.'s best interest. The record reveals respondent failed to appear at 14 court appearances. Respondent was told she would be defaulted if she failed to

appear at the arraignment, but she chose to go out of town and not to appear, despite counsel's advice to appear. Respondent was defaulted and took no steps to remedy the default. Respondent was served by publication, providing her notice of the final proceeding, yet she still failed to appear. Respondent chose to forgo her opportunity to be heard when she decided not to be present for court appearances and important stages of the proceedings. Respondent chose not to make any substantial steps to complete the treatment and services that were ordered. Respondent cannot choose to be absent from all the critical junctures of her case without any explanation and then complain she did not have an opportunity to be heard. Respondent repeatedly abandoned any opportunity to be heard when she chose not to appear and fails to set forth any argument on how she was prejudiced by proceeding in her and her attorney's absence.

¶ 36        We acknowledge respondent's contention that "[t]he failure to ensure assistance of counsel at a proceeding to terminate parental rights is far more consequential [than counsel's appointment at a shelter care hearing]." A parent's statutory right to be represented by counsel includes *all* stages of parental rights termination proceedings. See *K.L.P.*, 198 Ill. 2d at 467 (explaining the right attaches when the State files an action under the Juvenile Court Act). We find APD Kelly's failure to appear to represent her client at the fitness and best-interest hearings unacceptable. Moreover, the way the trial court proceeded with the hearing to terminate parental rights without ADP Kelly being present, knowing respondent was represented by counsel, is troubling and displays tribunal conduct that should not be condoned. Although the procedures followed in the trial court are troubling, the fact remains that respondent was in fact appointed counsel, and the evidence established that counsel, even had she appeared, could not have presented any defense that would have warranted a different outcome. The evidence in this case overwhelmingly supports the court's decisions regarding respondent's unfitness and M.R.'s best

interest. Based on the foregoing, we conclude respondent's fundamental parental rights were not terminated without the protections afforded by statute.

¶ 37                  III. CONCLUSION

¶ 38        For the reasons stated, we affirm the trial court's judgment.

¶ 39        Affirmed.